## MATTHEW HUNT vs. JOHN MICKEY.

By the provisions of the Rev. Sts. c. 146, the rules and regulations, made by the commissioners of pilots, approved by the trustees of the Boston Marine Society, and published in the newspapers, pursuant to *St.* 1835, c. 149, § 4, remained in force, with all the authority of law, after that statute was repealed by the *St.* of February 20th 1836.

Under the Rev. Sts. c. 32, and the fifth rule of the commissioners of pilots, made on the 16th of April 1835, and approved and published, as required by *St.* 1835, c. 149, § 4, the owner of a vessel, as well as the master, was liable to pay pilotage fees to a pilot who duly offered to pilot the vessel into Boston harbor.

THIS was an action of debt, brought by a pilot for the harbor of Boston, to recover his fees for offering to pilot the British schooner Catharine, owned by the defendant, into Boston harbor, on the 1st of June 1844.

At the trial in the court of common pleas, before *Ward*, J. it was in evidence that on the 1st of June 1844, the plaintiff hailed the said schooner, of which John Ellinwood was master, (the defendant being then on board,) outside of a line from Nahant Head to the Outer Graves, and offered to pilot her in, and that the offer was refused. The defendant then objected, that the action should have been brought against the master, and could not be maintained against the defendant.

The officer who served the writ was called as a witness for

the plaintiff, and he testified that the writ was originally against Ellinwood, the master, and that, when he went to serve it on board said schooner, he saw there the defendant, who said he was the owner of the schooner Catharine, and that "the master had nothing to do with it;" that he (the defendant) was the man who should be sued; and that the writ was therefore, at his request, altered by the plaintiff, and was served on the defendant.

The plaintiff gave in evidence his commission as pilot; and also the rules and regulations of the commissioners of pilots, made on the 16th of April 1835, approved by the trustees of the Boston Marine Society (as appeared by the records of said society) on the 17th of said April, and published one week in two Boston newspapers, pursuant to *St.* 1835, *c.* 149. The fifth of these rules was, "if any branch pilot of the harbor of Boston offers himself to any vessel liable to take a pilot, outside of a line drawn from Harding's Rocks to the outward Graves, and from there to Nahant Head, if inward bound, and the master of the vessel should refuse to take such pilot on board, the master and owners of said vessel, or either of them, shall incur and be liable to the penalty of the amount of pilotage said vessel would pay, for the benefit of the pilot so offering himself, if he be the complainant." The defendant objected to these rules and regulations, on the ground that they had not been approved by said trustees, nor reënacted by said commissioners, since the revised statutes went into operation, and before the commencement of this action.

The records of the Boston Marine Society were introduced, upon the call of the defendant, and upon inspection thereof, it did not appear of record, that the rules and regulations of the commissioners of pilots had been approved, by the trustees of said society, between the time when the revised statutes went into operation, and the commencement of this action; but the plaintiff introduced parol evidence tending to show such approval. It appeared by said records, that such approval of said rules and regulations had been made and recorded since this action was brought, viz. in November 1844.

It was also in evidence that other rules had been enacted by the commissioners of pilots, subsequently to the passing of the revised statutes, and had been approved by said trustees, and that the records of the commissioners of pilots were always kept in a desk to which said trustees had access, and that they could and did examine them, as often as they wished. It did not appear, however, from the records of the Boston Marine Society, or of the commissioners for pilots, that any exhibition of the doings of the commissioners had ever been made to said society. But there was parol evidence tending to show such exhibition. There was also evidence of the due publication of the commissioners' rules.

The defendant asked the judge to rule, that this action could not be maintained (if at all) against the owner, but should have been brought against the master; but the judge ruled that, on the facts in this case, it could be maintained against the owner.

The defendant also asked the court to rule that the regulations adopted by the commissioners of pilots, before the revised statutes went into operation, had no validity after those statutes were in operation, until they had been again approved, as of record, by the trustees of the Boston Marine Society; and that they had no force after the passage of the revised statutes, until reënacted by the commissioners of pilots. But the court ruled against the defendant on all the aforesaid points, and the jury returned a verdict for the plaintiff. The defendant filed exceptions to the judge's rulings.

*Wheelock,* for the defendant. 1. By the common law, the owner of a vessel is not liable to pay pilotage fees, on refusing a pilot's services. And the Rev. Sts. *c.* 32, § 12, on which this action is brought, and on which alone it can be supported, makes the master liable on such refusal, and the master only. In the ports of New Bedford and Fairhaven, and in these only, is the owner made liable, by § 39.

The language of the defendant, when the officer went to serve the writ on the master, does not estop him to object that the action cannot be maintained against himself. The

law was not altered by what the defendant then said. And the cases, in which parties have been estopped by misrepresentation and concealment, are not applicable to this case.

2. The commissioners' fifth rule, by which they undertake to render the owner liable, when the Rev. Sts. c. 32, § 12, have made only the master liable, is an excess of their authority. This is a matter of *law*, and not of *regulation* merely; and the statutes on the subject give them no such authority as they have assumed. See *Sts.* 1829, c. 2, § 3; 1835, c. 149, § 4; 1783, c. 13, §§ 5, 6; Rev. Sts. c. 32, §§ 27, 34. 5 Met. 421.

3. But, admitting the authority of the commissioners, yet they had not, after the revised statutes took effect, and before this suit was brought, reëstablished their rules and regulations, and obtained the approval of them by the trustees of the Boston Marine Society. The *St.* of 1835, c. 149, under which those rules were made, was repealed at the same time when the revised statutes came into operation, (Rev. Sts. p. 834;) and the rules fell with the law on which they rested. The Rev. Sts. c. 32, § 21, authorized the commissioners to make new regulations, and they might have availed themselves of that authority.

4. Parol evidence should not have been admitted of the approval of the commissioners' rules, by the trustees of the Boston Marine Society, after the revised statutes took effect.

*D. A. Simmons*, for the plaintiff. 1. Ship owners are liable, at common law, for pilotage fees, and the statutes give a cumulative remedy against masters. Abbott on Ship. Part II. c. 5. Dunlap's Adm. Pract. 497. *Hobart* v. *Drogan*, 10 Pet. 108. *Yates* v. *Brown*, 8 Pick. 23. *Heridia* v. *Ayres*, 12 Pick. 334. In *Martin* v. *Hilton*, 9 Met. 373, Hubbard, J. says, "the master of a vessel, who neglects or refuses to take a pilot on board his vessel, where provision is made for the receiving of pilots, exposes his owners to respond for the damages which may follow from such neglect or refusal."

The defendant's statement, when the officer went to serve

the writ on the master, was such a fraud as operates to estop him from denying his liability. Besides; as the defendant was on board when the plaintiff offered his services, the jury might lawfully infer that he was master for the time being.

2. The *Sts.* of 1829, *c.* 2, and 1835, *c.* 149, gave as full authority to the commissioners of pilots, as is given them by Rev. Sts. *c.* 32; and their fifth rule (which only is in question) was fully authorized by those statutes.

3. The act of February 20th 1836, (Rev. Sts. pp. 813–834,) which repealed the old statutes, contains provisions which prevented the effect which the defendant ascribes to the repeal. It was the intention of the legislature that there should be no time during which the regulations for pilotage should be inoperative; and that intention is secured by § 3 of the repealing act, and Rev. Sts. *c.* 146. By Rev. Sts. *c.* 32, § 21, the commissioners were authorized to "alter or amend any of the *existing* regulations for the pilotage of the harbor of Boston." This provision supposes that, when the revised statutes should come into operation, there would be some rules and regulations in existence, and that they would not be destroyed at the moment those statutes should take effect, and the previous statutes be repealed.

4. No statute requires that the approval of the commissioners' rules should appear on the records of the Boston Marine Society, or on any other records.

SHAW, C. J. This was an action to recover fees due to the plaintiff for pilotage; it appearing that the vessel was a British vessel, and that the plaintiff offered his services, beyond the line fixed by the Rev. Sts. *c.* 32, § 24, for that purpose. By law, such offer entitled the pilot to his fees, (Rev. Sts. *c.* 32, § 12;) and the chief question in this case is, whether the action is rightly brought against the owner, and whether should not have been brought against the master.

It was in evidence that the suit was at first commenced against the master; but the defendant, being present when the writ was about to be served, stated that he was owner of the vessel; that if any body was liable, it was he; that the

suit ought to be brought against him; and that the writ was accordingly altered. Whether, if the owner was not otherwise liable, he would be estopped, upon these facts, to deny his liability, we give no opinion.

It was contended, on the part of the defendant, that the owner is made liable for the fees of pilotage only by force of the rules and regulations adopted by the commissioners of pilots, and approved by the trustees of the Boston Marine Society, in April 1835, and that these regulations were not in force, because they were not reënacted after the adoption of the revised statutes, and the concurrent repeal of the act (*St.* 1835, *c.* 149) under which those regulations were made. Some evidence was offered to show that these regulations had been renewed in due form, after the revised statutes went into operation; and it was in proof that they were so renewed, for greater caution, in due form, after the commencement of this action; but we lay no stress upon this proof.

1. In the first place, it is obvious that if this were a good defence by the owner, it would be equally good in an action against the master; for it is by these rules and regulations that either the one or the other is made expressly liable for fees, where service is offered, but not actually performed. And further; if the law simply declared a right of the pilot to fees, without also declaring who should be liable for them, leaving that to implication, we should incline to believe that, by analogy to other maritime employments and services, both the owner and master would be respectively liable; the owner as the party benefited by the service, and the master as the party making the contract.

2. But we think it is not left to implication. It is provided in terms, by the rules and regulations of the commissioners for pilots, and duly approved by the trustees of the Boston Marine Society, and recorded and published, not only what the rate of fees shall be, but it is further provided (art. 5) that in case of a seasonable offer of a pilot to an inward bound vessel, and a refusal, the master and owners of said vessel, or either of them, shall be liable. It is objected, however, that

the rules and regulations, which, by *St.* 1835, *c.* 149, were declared to have the force of law, are not in force, because they were not reënacted by the commissioners, after the revised statutes went into operation.    But we do not so under- stand the revised statutes.    It is true that the former pilotage act was repealed, together with all the former statutes; but it was with many saving provisions.    The repealing act (*c.* 146, § 5) provided that no such repeal should affect " any act done."    The establishment of the regulations was an act done, and therefore not affected.    But the whole tenor and effect of these acts was to revise and modify subsisting laws, substituting the new for the old, and preserving every thing as it was before, except where it was specially altered.    All officers were to continue, and all things to remain *statu quo ;* although the acts providing for their appointment were in terms repealed.    So, all acts and parts of acts were to remain in force, until the corresponding provisions of the revised statutes took effect.    The act establishing this court, and all other courts in the Commonwealth, was in like manner repealed; but it has never been supposed, we believe, that all the rules made by courts for the regulation of their practice, became inoperative and void.    Such an opinion would lead to alarming consequences, the extent of which it is not easy to see.

But we think the true view of the case is this ; that taking the provisions all together, although, in terms, the former statutes were repealed, it was, in legal effect, only a repeal of such parts of the preëxisting acts as were repugnant to the acts substituted for them ; upon the principle that when a second statute, in the affirmative, is made in the same terms with a former one, both constitute but one law, taking effect from the earlier statute.

The repealing act was passed February 20th 1836, before the revised statutes went into operation, and to take effect at the same time.    Section 3 provides that the repeal shall take effect from and after April 30th 1836, but with all the excep- tions and limitations in that behalf expressed in the Rev. Sts.

*c.* 146. Referring to § 3 of that chapter, we find it is provided that " all acts and parts of acts, the subjects whereof are revised and reënacted in the revised statutes, or which are repugnant to the provisions therein contained, shall be repealed," &c. The result is, that where the new law is repugnant, so far, and no farther, it repeals the old; if the new law is the same, the old remains in force, until the new comes into operation, and *eo instanti* the new law replaces the old, to the same effect as if there had been no formal change of the one for the other.

The court are therefore of opinion that the rules and regulations of the commissioners of pilots remained in force after the adoption of the revised statutes, and notwithstanding the formal repeal of the *St.* of 1835, until altered, modified or repealed by some subsequent act of the legislature or of the commissioners; that the owner was liable to the plaintiff for the pilotage fees; and that the directions of the court below, in these respects, were right.

*Exceptions overruled*